Filed 8/13/14  Tolani v. International Fidelity Ins. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| TONY TOLANI et al., | C071354 |
| Plaintiffs and Respondents, | (Super. Ct. No. SCV27567) |
| v. | |
| INTERNATIONAL FIDELITY INSURANCE COMPANY, | |
| Defendant and Appellant. | |

Plaintiffs, several individuals, entered into contracts to purchase luxury penthouse condominiums at Lake Tahoe, and made earnest money deposits.  In accordance with state law, these deposits were covered by surety bonds, and then released to the developer.  The developer defaulted on the construction loan, and, at the close of escrow of the condominiums, was unable to deliver clear title.  Plaintiffs demanded of the developer and the sureties the return of their earnest money deposits.  They received no return.

Plaintiffs brought suit against the developer and the two sureties. They sought declaratory relief to resolve whether the surety defendant International Fidelity Insurance Company (IFIC) was obligated to pay them the proceeds of the surety bond equal to their earnest money deposits. The trial court granted plaintiffs' motion for summary adjudication as to IFIC. IFIC appeals, contending the trial court erred in granting summary adjudication because plaintiffs failed to show they were ready, willing, and able to perform their obligations under the purchase contracts.

As we explain, the contracts provided that the purchaser's sole remedy for a seller's failure to meet its obligations under the contract that was not cured within 10 days was rescission of the contract and refund of moneys paid. Because the seller's default and inability to cure was undisputed, the trial court properly granted the motion for summary adjudication. Accordingly, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are 10 individuals who, in the fall of 2007 or the spring of 2008, entered into purchase and sale agreements with Highlands Hotel Company to purchase seven condominium units at the Highlands development at North Star. Pursuant to the terms of the purchase agreements, each purchaser deposited into escrow a certain amount of earnest money. The purchase agreements contemplated close of escrow within 30 months after Highlands accepted the agreement. They also provided that time is of the essence. The purchase contracts provided that title to the property would be conveyed subject only to permitted exceptions, such as property taxes not yet delinquent and liens approved by the purchaser.

2

In accordance with state law, Highlands obtained a $3 million blanket surety bond from IFIC to protect the purchasers.[1]  The surety bond provided: "Whereas, Principal [Highlands] has elected, in lieu of individual tract bonds, to give this surety bond to the State of California in compliance with Section 11013.2(c) and/or Section 11013.4(b) of the Business and Professions Code of the State of California, as applicable, as a blanket and continuing obligation for the benefit and protection of each and every purchaser of any lot or lots within each and every subdivision now or hereafter offered for sale or lease, or sold or leased by Principal directly or through his agents in the State of California."

The escrow agent released the earnest money deposits to Highlands.

Highlands defaulted on the construction loan and Bank of America, as administrative agent for the lenders, refused to release the lien on the development. Accordingly, Highlands was unable to deliver clean title to the purchasers at the time for close of escrow as required by the purchase agreements.  The purchase agreements provided in part:  "If Seller has not complied with Seller's obligations under this Agreement, Purchaser must send Seller a notice that Purchaser considers Seller to be in default and providing a reasonably detailed statement of the nature of the default.  Upon receipt of that notice, Seller shall have ten (10) days in which to fulfill Seller's obligations.  Purchaser agrees that Purchaser's sole remedy in the event that Seller does not fulfill its obligations prior to the expiration of the ten (10) day cure period is to rescind this Agreement and to receive a refund of all monies that Purchaser has paid to Seller."

---

[1] Highlands also obtained a surety bond from another surety.  That surety bond is not at issue in this appeal.

Plaintiffs brought suit against Highlands, IFIC, and others for return of their earnest money deposits. The first amended complaint (FAC) alleged that "[b]y this Complaint--and prior written notice--plaintiffs notify Highlands of breach of contractual and other legal obligations and plaintiffs' terminating and rescinding the real estate purchase and sale contracts with Highlands based on its breach of contract, its fraudulent non-disclosures of material facts, and failure of consideration." The FAC also alleged that plaintiffs had notified IFIC of their claims against Highlands and against the surety bond.

The FAC alleged only a cause of action for declaratory relief against IFIC. The FAC alleged that plaintiffs had notified IFIC of their claims on the surety bond and IFIC had not responded. Plaintiffs anticipated that IFIC would deny the claims. Plaintiffs asked the court to resolve the dispute with IFIC as to whether IFIC "must pay to Plaintiffs surety bond proceeds equal to their earnest money deposits, prejudgment interest, and costs of suit."

Subsequent to the filing of the FAC, the court-appointed receiver for Highlands received confirmation from Bank of America that the blanket encumbrance on the Highlands development would not be released. The receiver then executed a series of notices of termination for the purchase agreements for the sale of units at the Highlands Hotel Residences at North Star. Plaintiffs obtained a default judgment against Highlands, in the amount of the earnest money deposits plus interest.

Plaintiffs moved for summary adjudication against IFIC. They set forth as undisputed various facts about the purchase agreements, the surety bond issued by IFIC, and Highlands's inability to deliver a clean title in order to close escrow within the 30-month deadline. Plaintiffs argued they were entitled as a matter of law to an order directing IFIC to return their earnest money deposits.

4

In response, IFIC accepted most of the facts as undisputed for purposes of the motion, but claimed those facts were insufficient to establish plaintiffs' right to a refund of the earnest money deposits.[2] IFIC contended that to recover, "plaintiffs must show that they were ready, willing, and able to perform under their individual purchase contracts."

The trial court granted the motion for summary adjudication and entered judgment against IFIC.

## DISCUSSION

"An action for declaratory relief is appropriate to determine the legal rights and duties of the parties to a written contract. (Code Civ. Proc., § 1060.) Where, as here, the only cause of action [against a particular defendant] is one for declaratory relief, a motion for summary [adjudication] likewise is appropriate. [Citations.]" (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 52.) A ruling on a motion for summary adjudication involves a pure question of law and is subject to de novo review on appeal. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

The contracts at issue here are the surety bond and the purchase agreements. The surety bond, by its express terms, was issued to comply with Business and Professions Code section 11013.2. Generally, it is illegal to sell lots or parcels that are subject to a blanket encumbrance unless such encumbrance has a release clause. (Bus. & Prof. Code, § 11013.1.) Section 11013.2 permits a developer to sell lots or parcels that are subject to

---

[2] IFIC disputed that its bond was to protect the purchasers of the Highlands development, asserting the bond was for the benefit of only certain purchasers identified in the bond. IFIC offered no facts in support of this assertion, other than the terms of the bond. The bond identifies no specific purchasers and states it is "for the benefit and protection of each and every purchaser of any lot" offered for sale or sold by the Principal, Highlands.

5

a blanket encumbrance without a release clause if: "A bond to the State of California is furnished to the commissioner for the benefit and protection of purchasers or lessees of such lots or parcels, in such amount and subject to such terms as may be approved by the commissioner, which shall provide for the return of the moneys paid or advanced by any purchaser or lessee, for or on account of the purchase or lease of any such lot or parcel if a proper release from such blanket encumbrance is not obtained; provided, however, that if it should be determined that such purchaser or lessee, by reason of default or otherwise, is not entitled to the return of such moneys, or any portion thereof, then such bond shall be exonerated to the extent of the amount of such moneys to which such purchaser or lessee is not entitled." (Bus. & Prof. Code, § 11013.2, subd. (c).)

Although IFIC did not dispute that Highlands was unable to obtain release of the condominium units from the blanket encumbrance, it contends plaintiffs are not entitled to return of their earnest money deposits because they have failed to show they are ready, willing, and able to perform under the purchase contract. IFIC argues plaintiffs have not--and likely cannot--show they were ready, willing, and able to fund the purchase of the condominiums. IFIC relies on *Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613 (*Ersa Grae*).

In *Ersa Grae*, that company sued Fluor for damages for breach of a contract to sell real property to Ersa Grae. (*Ersa Grae, supra*, 1 Cal.App.4th at p. 616.) The contract contemplated that, within 120 days of execution of the agreement, Ersa Grae would form a consortium to provide the funding to finance construction on the property. (*Id*. at p. 618.) Fluor decided to sell the property to another company instead of Ersa Grae. (*Id*. at pp. 619-620.) The jury found that a contract had been formed between Ersa Grae and Fluor and that Fluor breached the contract. (*Id*. at p. 620.) In the second phase of the trial, the jury awarded Ersa Grae substantial damages based on the difference between the purchase price and the value of the property at the time of the breach. (*Id*. at pp. 621, 626-627.)

6

In reversing the judgment and remanding the case for a new trial on damages, the appellate court agreed with Fluor that the trial court should have required Ersa Grae to prove it was ready, willing, and able to perform the contract. "Although it is true that an anticipatory breach or repudiation of a contract by one party permits the other party to sue for damages without performing or offering to perform its own obligations [citation], this does not mean damages can be recovered without evidence that, but for the defendant's breach, the plaintiff would have had the ability to perform. [Citation.]" (*Ersa Grae, supra*, 1 Cal.App.4th at p. 625.) The *Ersa Grae* court explained that Ersa Grae was not required to actually put together the consortium for financing the purchase, but "evidence should have been presented by Ersa Grae to prove that, but for Fluor's breach, Ersa Grae had the ability (by way of [it's broker's] contacts or otherwise) to form the consortium and fund the deal." (*Id*. at p. 626.)

Plaintiffs contend *Ersa Grae* is not applicable because they sought only return of their deposits, not damages for breach of contract. IFIC responds that the rule of *Ersa Grae* applies because plaintiffs did not sue for rescission; instead, they sued Highlands for breach of contract. IFIC argues that the FAC "does not mention the term rescission." The FAC does, however, allege that the complaint and prior written notice notified Highlands of its breach of contractual and other legal obligations and of plaintiffs' terminating and rescinding the real estate purchase and sale contracts. Further, in moving for summary adjudication, plaintiffs offered the declaration of the receiver that he had executed notices of termination of the purchase agreements, "releasing Plaintiffs in the instant action from their Purchase and Sale Agreements with Highlands."

In arguing that plaintiffs sued for breach of contract and thus *Ersa Grae* applies, IFIC ignores the language of the purchase contracts which set forth the exclusive remedy where the Seller fails to meet its obligations (such as delivering clean title). The sole remedy is rescission and return of monies paid. Plaintiffs' cause of action against IFIC was for declaratory relief and sought only return of their deposits plus interest and costs.

Under the provisions of both the surety bond and the purchase contracts, plaintiffs are entitled to return of their earnest money deposits due to Highlands's undisputed inability to deliver clean title. Rescission is an appropriate remedy where there is a material failure of consideration. (Civ. Code, § 1689, subd. (b)(2).)

IFIC contends the rule of *Ersa Grae* has been applied in cases involving specific performance and declaratory relief, as well as those for damages for breach of contract. In all of the cases it cites, however, the remedy sought was for specific performance. (*Henry v. Sharma* (1984) 154 Cal.App.3d 665, 669; *Am-Cal Inv. Co. v. Sharlyn Estates, Inc.* (1967) 255 Cal.App.2d 526, 539; *Ninety Nine Investments v. Overseas Courier Service (Singapore) Private* (2003) 113 Cal.App.4th 1118, 1126; *C. Robert Nattress & Assocs. v. CIDCO* (1986) 184 Cal.App.3d 55, 63-64.) In those cases the plaintiffs sought to affirm the contract and thus had to show an ability to perform under it. IFIC cites to no authority--and we have found none--that a plaintiff must show ability and willingness to perform as a prerequisite to declaratory relief of rescission and restitution. As we discuss *ante*, it appears to the contrary.

In his treatise on contracts, Professor Williston distinguishes between suits to enforce a contract for the purchase of land or recover damages and those for rescission and restitution with respect to the need to prove that plaintiff is ready, willing, and able to perform.[3] Noting the considerations of equity in rescission, the treatise indicates that if, as here, the contract provides the contingencies in which restitution shall be allowed, that provision will be enforced. (26 Williston on Contracts (4th ed. 2003) § 68:10, p. 112.) The treatise cites as an example the exact situation here: where a seller who has accepted deposits from buyers is then unable to deliver clean title. "Thus, where a defendant

---

[3] In concluding that Ersa Grae had to prove its ability to perform the contract, the court relied in part on Professor Williston's treatise on contracts. (*Ersa Grae, supra*, 1 Cal.App.4th at p. 625.)

sought to resist a plaintiff's demand for restitution of a down payment on land that the plaintiff had contracted to purchase and to which defendant could not convey good title by asserting that the plaintiff was motivated by a desire to avoid the transaction in bad faith and had not shown himself willing and able to perform, the court ruled:  [¶]  'A contract for the purchase of lands may be rescinded, and the purchase moneys paid in advance may be recovered, on the failure of the seller to perform, even though the purchaser could not have performed.  In an action to rescind and recover payments made on account of the purchase price it is enough to show a breach by the seller.  This is not the rule, however, when the action is to enforce the contract or to recover damages; for the seller's breach, here, the one seeking damages for its breach must tender and prove his own readiness, willingness, and ability to perform.' " (26 Williston on Contracts, *supra*, § 68:10, pp. 114-115, quoting *Weintraub v. Rungmar Realty Corp.* (Sup.Ct.1962) 231 N.Y.S.2d 241, 244.)

California law permits recovery of the buyers' deposits in this situation.  In *Rutherford Holdings, LLC v. Plaza Del Ray* (2014) 223 Cal.App.4th 221, the parties contracted for the purchase and sale of a mobile home park.  Rutherford made a substantial deposit but the sale was never completed and Rutherford sued to recover its deposit.  (*Id*. at pp. 226-227.)  After sustaining defendant's demurrers, the trial court entered a judgment of dismissal.  (*Id*. at p. 227)  On appeal, the court held Rutherford could state a cause of action for money had and received based on the total failure of consideration and it was not necessary to bring a formal action for rescission.  (*Id*. at p. 230.)  "Where the failure of the consideration is total, 'the law implies a promise on the part of the other to repay what has been received by him under the contract . . . .' [Citation.]  Such a promise is implied because the 'defendant cannot in equity and good conscience retain the benefits of the agreement and repudiate its burdens . . . .' [Citation.]" (*Ibid*.)

The trial court did not err in granting the plaintiffs' motion for summary adjudication.

## DISPOSITION

The judgment is affirmed. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)



                 DUARTE          , J.


We concur:


       BLEASE         , Acting P. J.


       MURRAY      , J.